IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY BETH MARSHALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| ACADEMY LTD., | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Mary Beth Marshall ("Plaintiff" or "Mrs. Marshall"), files her Original Complaint against Defendant Academy Ltd. ("Academy", "Defendant", or "the Company").

1.      For more than 34 years, Mrs. Marshall loyally worked for Academy in College Station, before she was fired from her job as Assistant Manager on a flimsy pretext for sex discrimination.   The Store Director who fired her, Ed McDowell, was "chauvinistic and arrogant."  Kitchens Aff., Ex. 3 at ¶ 7.  He "talk[ed] down to people, particularly women," and "acted as if women couldn't do the same job as men."  Brinkman Aff., Ex. 7 at ¶ 4.

2.      On April 24, 2017, Mr. McDowell fired Mrs. Marshall for allegedly allowing a new hire to begin working before his hiring paperwork was complete.   This is false.  And, in any event, Mr. McDowell himself admitted that, just the year before, a male Assistant Manager named Rex Gibson had done the very same thing he accused Mrs. Marshall of doing, and he did not even discipline, much less fire, Mr. Gibson.   *See* Brinson Aff., Ex. 1 at ¶ 6.  Mr. McDowell fired Mrs. Marshall because of her sex.  Mrs. Marshall thus brings this sex discrimination case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.001 *et seq*.

## THE PARTIES, JURISDICTION, AND VENUE

3.     The Plaintiff, Mrs. Marshall, is a natural person residing in College Station, Texas.  Mrs. Marshall has standing to file this lawsuit.

4.     The Defendant, Academy, is a Texas company headquartered at 1800 North Mason Rd, Katy, Texas 77449.  Academy may be served with process by serving its registered agent, Turner M. Wade, at that address.

5.     During 2016 and 2017, Academy engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks in both calendar years.  As such, Academy is a Title VII and a TCHRA defined "employer," that is subject to liability for sex discrimination under Title VII and the TCHRA.

6.     Personal jurisdiction exists based on both general and specific jurisdiction.

7.     Subject matter jurisdiction is proper in this Court because Plaintiff sues under Title VII, a federal law.   The Court has supplemental jurisdiction over Mrs. Marshall's TCHRA claim.

8.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Southern District of Texas, and the unlawful employment practices alleged in this case occurred in the Southern District of Texas.

## FACTUAL BACKGROUND

9.     In 1982, Mrs. Marshall graduated from high school.  In February 1983, Mrs. Marshall began her employment with Academy in College Station, Texas.  She was 19 years old. She became an Assistant Manager in 1984.  She worked for Academy until April 24, 2017 – more than 34 years.  She was one of the longest serving and best employees Academy had.  *See* Pepper Aff., Ex. 2 at ¶ 7.

10.     Academy is one of the nation's largest sporting goods and outdoor stores. It is currently owned by funds advised by Kohlberg Kravis Roberts & Co. L.P., a leading global investment firm, and led by CEO and President J.K. Symancyk.

11.     Academy's sales revenues reached one billion dollars in 2004, two billion dollars in 2007, and three billion dollars in 2012.   Today, Academy operates over 225 stores in approximately 16 states with 25,000+ employees throughout the South, Southeast and Midwest, and has annual sales in excess of $4 billion.

12.     Because of Mrs. Marshall's exemplary leadership, professionalism, work ethic, and commitment to customer services, she was beloved by her coworkers and subordinates – many of whom have given sworn affidavits extolling her many virtues and great value to Academy.  *See* Brinson Aff., Ex. 1 at ¶ 3; Pepper Aff., Ex. 2 at ¶¶ 3-7; Kitchens Aff., Ex. 3 at ¶¶ 2-6; Brack Aff., Ex. 4 at ¶¶ 2-4; Gustavus Aff., Ex. 5 at ¶¶ 3-7; Landry Aff., Ex. 6 at ¶¶ 2-5; Brinkman Aff., Ex. 7 at ¶ 3; Konderla Aff., Ex. 8 at ¶¶ 4-8; Hatton Aff., Ex. 9 at ¶¶ 3, 6; Matej Aff., Ex. 10 at ¶¶ 3-6; Oviedo Aff., Ex. 11 at ¶¶ 3-4.   For example:

- Andrew Brinson testified that Mrs. Marshall "worked very hard, was dedicated, competent, and was loyal to Academy and its customers." Brinson Aff., Ex. 1 at ¶ 3.

- Chris Pepper testified that "I have had a lot of bosses over the years, but Mrs. Marshall stands out as one of the best," that "she treated everyone firmly, fairly, and with respect," and "was always a gentlewoman who demonstrated professionalism in everything she did."  Pepper Aff., Ex. 2 at ¶¶ 3-5.  He was "shocked" to learn she had been terminated.  *Id*. at ¶ 6.

- David Kitchens testified that "Mrs. Marshall was a top-notch manager," and "hard worker," who "helped me in every aspect of my job."  Kitchens Aff., Ex. 3 at ¶ 3. He was "dumbfounded" by her termination.  *Id*. at ¶ 6.

- Lindsey Brack testified that Mrs. Marshall "was always very dedicated to her job," that she "could go to her with any problem and she would help me," and that she "was very knowledgeable about the job because of her experience."  Brack

Aff., Ex. 4 at ¶ 3.  She was "blown away" and "could not believe it" when she learned Mrs. Marshall had been terminated.  *Id*. at ¶ 5.

- Don Gustavus testified that Mrs. Marshall was "a fine Assistant Manager," who provided "outstanding customer service," and that "[p]eople would smile when they walked into Academy and saw her."  Gustavus Aff., Ex. 5 at ¶ 5.  He testified that it was "both unbelievable and a shame that she was let go."  *Id*. at ¶ 7.

- Shelly Landry testified that Mrs. Marshall was "an awesome employee," who "knew how everything worked and was always ready to help."  Landry Aff., Ex. 6 at ¶ 3.  She was "really shocked" when she learned Mrs. Marshall had been terminated.  *Id*. at ¶ 5.

- Kirstie Brinkman testified that Mrs. Marshall "knew what she was doing, got the job done, kept everyone in line, and treated everyone fairly."  Brinkman Aff., Ex. 7 at ¶ 3.

- Chuck Konderla testified that Mrs. Marshall "is a machine," who he always saw "very busy," and "leading by example" in the store.  Konderla Aff., Ex. 8 at ¶ 4.

- Dallas Hatton testified that Mrs. Marshall "was a no-nonsense manager" who "worked especially hard," and that he moved areas so that he could work under her.  Hatton Aff., Ex. 9 at ¶¶ 3-4.  Hatton testified that, "Mrs. Marshall loved Academy.  I was in disbelief when I learned she was fired for an alleged performance issue.  My reaction was there is no way.  That has to be a bold-faced lie.  Without a shadow of a doubt, Mrs. Marshall was the best manager and employee in the Academy store during my time there."  *Id*. at ¶ 5.

- Wesley Matej testified that Mrs. Marshall "was the go-to manager in the store," was "always active," "was one of the few managers who was constantly doing the necessary physical work," "was always positive," and "[s]he covered for other managers when they could not work, stayed late, and worked a lot of the awkward shifts such as opening and closing.  I watched her give her all to the job."  Matej Aff., Ex. 10 at ¶¶ 3-5.

- Mary Oviedo testified that Mrs. Marshall "was an excellent manager who knew her store and knew her employees," and "cared so much about the store."  Oviedo Aff., Ex. 11 at ¶¶ 3-4.

13.     In 2014, Ed McDowell became the Store Director of Mrs. Marshall's store.  *See* Brinson Aff., Ex. 1 at ¶ 4.  According to a former coworker, Kirstie Brinkman, Mr. McDowell "talk[ed] down to people, particularly women," and "acted as if women couldn't do the same job as men."  Brinkman Aff., Ex. 7 at ¶ 4.  According to another former coworker and customer,

David Kitchens, Mr. McDowell struck him as being "chauvinistic and arrogant."  Kitchens Aff., Ex. 3 at ¶ 7.

14.     At all times while Mr. McDowell was the Store Director, Mrs. Marshall was employed as one of five Assistant Managers at the store.  She was the only female Assistant Manager; the other four were all males.  Mrs. Marshall was dedicated to the store and to her job. For example, when it would rain, the store's alarm would sometimes go off in the middle of the night, and it was Mrs. Marshall who would usually be the one to get out of bed, go to the store, and take care of the situation by herself.

15.     Mr. McDowell discriminated against Mrs. Marshall based on sex.  As Andrew Brinson, a coworker at Academy, testified from his own personal knowledge: (a) Mr. McDowell talked down to Mrs. Marshall as compared to the male Assistant Managers; (b) Mr. McDowell blamed her for things that were not within her department; and (c) Mr. McDowell would deny, or give her a hard time, about getting time off, while freely permitting the other male Assistant Managers time off even when they had none accumulated to use.  *See* Brinson Aff., Ex. 1 at ¶ 4.

16.     On Monday, April 24, 2017, Mr. McDowell told Mrs. Marshall in an approximately two-minute meeting that she was terminated due to not completing paperwork on a new hire named David Parr because that "put the Company in jeopardy of a lawsuit."  This allegation is false.  And, in any event, a male Assistant Manager, Rex Gibson, actually did the same, or nearly identical, thing that Mrs. Marshall was falsely accused of while Mr. McDowell was the Store Director, and Gibson was not given any discipline at all, much less fired for it, even though Mr. McDowell was well aware of the fact that Gibson had not completed the paperwork on the new hire, whose name was Blake Patkowski.  *See* Brinson Aff., Ex. 1 at ¶ 5.

17.     Right after Mrs. Marshall was fired, while she was still in total shock, she called Academy's HR Generalist assigned to support her store, Sunny Rajabi, at 1:26 p.m., to complain about her unjust and sexist termination.  Ms. Rajabi worked out of the Company's corporate headquarters in Katy, Texas.  Ms. Rajabi did not answer her phone, so Mrs. Marshall left a voicemail asking her to call her back.  She never did.

18.     In an employee meeting Mr. McDowell conducted right after he fired Mrs. Marshall, Andrew Brinson, who was still employed by Academy at the time, asked why she was fired, when Rex Gibson was not, even though Gibson did not fill out the new hire paperwork on Blake Patkowski.  *See* Brinson Aff., Ex. 1 at ¶ 6.  Mr. McDowell stumbled over his words in trying to give an explanation for the differential treatment, but eventually admitted, "well I guess it's not different."  *See* Brinson Aff., Ex. 1 at ¶ 6.  Thus, Mr. McDowell admitted that what he falsely accused Mrs. Marshall of, and what Rex Gibson actually did, was "not different," but she got fired and Gibson did not.  *See* Brinson Aff., Ex. 1 at ¶ 6.

19.     After Mrs. Marshall was fired, Mr. McDowell replaced her with a male, Cody Sheffield.  This meant that now all the Assistant Managers working in the store were males.

20.     After her termination, Mrs. Marshall applied for unemployment, and was granted benefits by the Texas Workforce Commission ("TWC").  Academy appealed the TWC's determination (Ex. 13).  But, when Academy's appeal was set for a hearing during which its witnesses would have been required to testify under oath, the Company tellingly failed to appear, and abandoned its appeal.

21.     On May 15, 2017, Mrs. Marshall filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC-CRD") alleging that Academy discriminated against her, and terminated

her employment, because of her sex, in violation of the TCHRA (Ex. 15).  More than 180 days have passed since Mrs. Marshall filed her Charge of Discrimination, and she now brings this lawsuit, as is her right under the TCHRA.  *See infra*.  Mrs. Marshall obtained a Right to Sue letter from the EEOC in November 2017, giving her ninety days from the receipt of the letter to file suit under Title VII (Ex. 16).  She files this suit well within that deadline.

## CLAIMS FOR SEX DISCRIMINATION UNDER TITLE VII AND THE TCHRA

**A.  Legal Standards**

22.    Sex discrimination in employment is prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the TCHRA, TEX. LAB. CODE § 21.001 *et seq*.  The two laws are interpreted consistent with one another, because in enacting the TCHRA, the Texas legislature intended to correlate state law with federal law in employment discrimination cases. *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999).

23.    To establish a *prima facie* case of discrimination under Title VII and the TCHRA, a plaintiff must show that: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group." *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992).  After the plaintiff establishes a *prima facie* case, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  The employer's burden is one of production, not persuasion, and does not involve a credibility assessment. *Id*. at 559.  The burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the

plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (alteration in original).   Under the pretext alternative, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory ... purpose." *McCoy*, 492 F.3d at 557. Under the mixed-motive alternative, if the plaintiff shows that the plaintiff's protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the characteristic. *See Rachid*, 376 F.3d at 312.

**B.     Analysis**

24.     Mrs. Marshall incorporates the preceding paragraphs of this complaint as if set out verbatim.

25.     Mrs. Marshall wins under the circumstantial model.  She easily makes out a *prima facie* case of sex discrimination.   She is a woman. She was objectively qualified for her job position.  She was discharged, and, she was replaced by a male, Cody Sheffield.

26.     The burden now shifts to Academy to articulate a legitimate and nondiscriminatory basis for Mrs. Marshall's termination.  Mr. McDowell told Mrs. Marshall she was terminated due to not completing paperwork on a new hire named David Parr because that "put the Company in jeopardy of a lawsuit."

27.     This allegation is a pretext for sex discrimination.  First off, it is false.  That it is false gives rise to an inference of pretext, and sex discrimination *vel non*.    *Haire v. Board of Sup'rs of La. State Univ. Agricultural & Mech. Coll*., 719 F.3d 356, 365 n. 10 (5th Cir. 2013) (reversing summary judgment for the employer in a discrimination case, and holding that, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence . . .

is likely to support an inference of discrimination *even without further evidence of defendant's true motive*.") (italics in original).

28.     Second, a male Assistant Manager, Rex Gibson, actually did the same, or nearly identical, thing that Mrs. Marshall was falsely accused of while Mr. McDowell was the Store Director, and Gibson was not given any discipline at all, much less fired for it, even though Mr. McDowell was well aware of the fact that Gibson had not completed the paperwork on the new hire, whose name was Blake Patkowski.  *See* Brinson Aff., Ex. 1 at ¶ 6.  When Andrew Brinson called out Mr. McDowell on his disparate treatment, Mr. McDowell stumbled over his words, but eventually admitted, "well I guess it's not different."  *See* Brinson Aff., Ex. 1 at ¶ 6.  This admittedly differential treatment under nearly identical circumstances also gives rise to an inference of pretext, and sex discrimination *vel non*.   *See Wheat v. Florida Parish Juvenile Justice Comm*., 811 F.3d 702, 711 (5th Cir. 2016) (reversing summary judgment based on evidence of disparate treatment and inconsistent punishment of similar policy violations); *Carmona v. Southwest Airlines Co*., 604 F.3d 848, 861-62 (5th Cir. 2010) (affirming jury verdict in a discrimination case where other employees who committed the same offense plaintiff was fired for committing had not been terminated); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 590 (5th Cir. 1998) (jury was justified in finding that plaintiff's "shopping on the clock" was not the real reason for her termination in light of evidence that other employees had purchased items during their shifts and had not been terminated.).

29.     In other words, as the U.S. Court of Appeals for the Fifth Circuit has said, "[a]lthough an employer may penalize employee misconduct, it must apply the penalties equally." *Levitt v. University of Texas at El Paso*, 847 F.2d 221, 227 n. 14 (5th Cir. 1988); *see also Portis v. First Nat'l Bank of New Albany, MS,* 34 F.3d 325, 330-31 (5th Cir. 1994) (female

plaintiff's sex discrimination claim was for jury to decide given evidence that similarly situated male employees had committed similar acts of misconduct that plaintiff was fired for, but were not disciplined or fired); *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051 (8th Cir. 1993) (refusing to allow misconduct to negate discrimination where other employees were not disciplined for the same misconduct); *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1299 (5th Cir. Unit A 1981) ("[P]laintiffs' discharges are unlawful despite their wrongdoing, if it is shown that, for impermissible reasons, they were singled out for discriminatory treatment—either for discharge from among others equally guilty, or for investigation from among others equally suspected.").

30.     Third, Academy gave shifting and conflicting reasons for terminating Mrs. Marshall.   At first, it told her and her coworkers that she was fired due to not completing paperwork on a new hire named David Parr.  Brinson Aff., Ex. 1 at ¶ 5. Academy initially told the TWC the same thing (Ex. 12).  But, when that explanation failed to convince the TWC to deny Mrs. Marshall unemployment benefits, Academy changed stories, and (falsely) told the TWC that Mrs. Marshall was fired for chronic, persistent, long-standing poor performance – a claim so preposterous that the Company later abandoned its appeal on this basis (Ex. 13).  This changing of stories is additional proof of pretext and sex discrimination *vel non*.  *See e.g.*, *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (reversing summary judgment for the employer in discrimination case, and stating that, "[a]n employer's inconsistent explanations for an employment decision "cast doubt" on the truthfulness of those explanations."); *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."); *see also*

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408 (5th Cir. 2007) (shifting explanations can be evidence of pretext); *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002) (same).

31.     Fourth, the belated story Academy peddled to the TWC that Mrs. Marshall had chronic, persistent, long-standing poor performance problems is patently false.  This is clear from Academy's own documents.  In March 2017, just one month before she was fired, Mrs. Marshall was given her annual performance review for 2016 with an overall rating of 3.68 out of 5, which translates to a favorable rating between "Consistently Meets Expectations" (which is a 3) and just below "Regularly Above Expectations" (which is a 4).  *See* Marshall's 2016 Performance Evaluation, Ex. 14.   On the review, Mrs. Marshall did not receive a rating in any category that was less than a 3, which, as noted, means "Consistently Meets Expectations."  (*Id.*). Thus, Academy's assertion that Mrs. Marshall had chronic, persistent, long-standing poor performance problems is not only inconsistent with Academy's prior given reason for termination to her and her coworkers (and initially the TWC (Ex. 12)), but it is also patently false as proven by its own performance appraisal for Mrs. Marshall that was given to her just one month before her termination (Ex. 14).   This too supports a finding of pretext and sex discrimination *vel non*. *See Lloyd v. Georgia Gulf Corp.*, 961 F.2d 1190, 1195 (5th Cir. 1992) (". . . when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext.") (citing *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 124 (5th Cir. 1992); *Hansard v. Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1465 (5th Cir. 1989) ("where the only evidence of intent is oral testimony, a jury could always choose to discredit it.") (quoting *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 262 (3d Cir. 1987); *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 207 (5th Cir. 1986)).  *See also Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245

(5th Cir. 2016) (holding that summary judgment was not proper in a TCHRA sex discrimination case where the employer had no contemporaneous documentation to support its assertions of poor performance against the employee, and instead relied solely on after-the-fact documentation and testimony from interested witnesses); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 239-40 (5th Cir. 2015) (holding that the lack of contemporaneous documentation to support claims of poor performance may in appropriate cases be evidence of pretext, and reversing a summary judgment that had been entered for the employer by the district court).

32.     Furthermore, as noted above, numerous affidavits from former coworkers further prove that Mrs. Marshall's job performance was outstanding, and better than the other male Assistant Store Managers.  *See* Brinson Aff., Ex. 1 at ¶ 3; Pepper Aff., Ex. 2 at ¶¶ 3-7; Kitchens Aff., Ex. 3 at ¶¶ 2-6; Brack Aff., Ex. 4 at ¶¶ 2-4; Gustavus Aff., Ex. 5 at ¶¶ 3-7; Landry Aff., Ex. 6 at ¶¶ 2-5; Brinkman Aff., Ex. 7 at ¶ 3; Konderla Aff., Ex. 8 at ¶¶ 4-8; Hatton Aff., Ex. 9 at ¶¶ 3, 6; Matej Aff., Ex. 10 at ¶¶ 3-6; Oviedo Aff., Ex. 11 at ¶¶ 3-4.  This too proves pretext and sex discrimination *vel non*.  *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 224 (5th Cir. 2000) (affirming verdict for plaintiff in a discrimination case and relying on testimony from a coworker that, contrary to the employer's claim, "Russell did an "excellent" job of keeping the facility in federal compliance.").

33.     Fifth, testimony from former coworkers supports Mrs. Marshall's claim that Mr. McDowell is a sexist. Kirstie Brinkman testified that Mr. McDowell "talk[ed] down to people, particularly women," and "acted as if women couldn't do the same job as men."  Brinkman Aff., Ex. 7 at ¶ 4.  According to former coworker and customer, David Kitchens, Mr. McDowell struck him as being "chauvinistic and arrogant."  Kitchens Aff., Ex. 3 at ¶ 7.  And, Andrew Brinson testified that: (a) Mr. McDowell talked down to Mrs. Marshall as compared to the male

Assistant Managers; (b) Mr. McDowell blamed Mrs. Marshall for things that were not within her department; and (c) Mr. McDowell would deny, or give Mrs. Marshall a hard time, about getting time off, while freely permitting the other male Assistant Managers time off even when they had none accumulated to use. *See* Brinson Aff., Ex. 1 at ¶ 4. This coworker testimony also proves sex discrimination. *See Hansard v. Pepsi-Cola Metrop. Bottling Co.*, Inc., 865 F.2d 1461, 1466-67 (5th Cir. 1989) (finding that a coworker's testimony offering his opinion that age discrimination occurred supported the jury's verdict in the plaintiff's favor).

**C.    Damages Under Title VII And The TCHRA**

34.    Mrs. Marshall incorporates the preceding paragraphs of this complaint as if set out verbatim.

35.    At the time of her termination from Academy, Mrs. Marshall was earning an annual salary and bonus totaling approximately $72,000.00. She also received various benefits through benefit plans sponsored by Academy. Mrs. Marshall does not have a college degree. It is a sad but incontrovertible fact that after being fired by Academy at age 53 in College Station, Texas, Mrs. Marshall is unlikely to find employment in a substantially equivalent position again in the near future – if ever.[1]

36.    Mrs. Marshall is entitled to back-pay, measured by the difference between the earnings she would have had at Academy and what she actually earned (if anything) between the date of her termination's effective date, and the date of final judgment. In addition, the back-pay award would include the costs of uncovered medical treatments, or payments for replacement insurance, and other benefits. *See Pearce v. Carrier Corp.*, 966 F.2d 958, 959 (5th Cir. 1992); *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 (5th Cir. 1992).

---

[1] *See, e.g.*, http://knowledge.wharton.upenn.edu/article.cfm?articleid=2577 (Interview in September 2010 with Peter Cappelli, director of Wharton's Center for Human Resources, in which he states that "[o]lder workers struggle to get hired.").

37.     Mrs. Marshall also seeks reinstatement or front-pay.   "[R]einstatement is not preferred over front pay when there is no vacancy in the desired position."   *Mitchell v. Sisters of Charity of Incarnate Word*, 924 F. Supp. 793 (S.D. Tex. 1996) (quoting *Shore v. Federal Express Corp.*, 777 F.2d 1155 (6th Cir. 1985)).   In other words, if reinstatement would require displacing or bumping an innocent employee from their job, then it is considered to be infeasible, and front-pay may be awarded instead of reinstatement.   *See Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1254 (5th Cir. 1995).   Reinstatement is likely not feasible in this case, because there is no vacancy at the Academy in College Station for an Assistant Manager positon. Thus, front pay is most likely the appropriate form of relief.   "Front pay refers to future lost earnings." *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied). *See Dell, Inc. v. Wise*, 424 S.W.3d 100, 114 (Tex. App.–Eastland 2013, no pet.) (stating in a TCHRA discrimination case that "[f]ront pay is lost compensation from trial forward **until a reasonable retirement age**, which also is a fact question for the jury.") (bold added); *see also Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 n. 8 (5th Cir. 1996) ("[f]ront pay is usually invoked when reinstatement is impracticable and is calculated from the date of judgment to age 70, or the normal retirement age, and should reflect earnings in mitigation of damages.") (citing J. Hardin Marion, Legal and Equitable Remedies Under the Age Discrimination in Employment Act, 45 MD.L.REV. 298, 330–334 (1986)).   *See Jackson*, 2011 WL 2119644, at *7-8 (affirming five-year front-pay award in a TCHRA case); *Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (affirming ten year front-pay award in a Title VII case); *Donlin v. Philips Lighting North Am. Corp.*, 581 F.3d 73, 88 (3rd Cir. 2009) (holding that district court did not abuse its discretion in awarding plaintiff front pay for ten years); *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 79 (2d Cir. 2004) (affirming front

pay awards of nine to twelve and one-half years), *vacated on other grounds sub nom KAPL, Inc. v. Meacham*, 544 U.S. 957 (2005); *Gotthardt v. National R.R. Passenger Corp.*, 191 F.3d 1148 (9th Cir. 1999) (affirming an eleven year front pay award); *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 574 (7th Cir. 1995) (holding that ten-year front pay award did not constitute an abuse of discretion); *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 286 (8th Cir. 1993) (holding that a ten year front pay award did not constitute an abuse of discretion).

38.    Mrs. Marshall is also entitled to compensatory damages under Title VII and the TCHRA for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3) (Title VII); Tex. Lab. Code § 21.2585(d) (TCHRA).  As one would reasonably foresee, being fired because of her sex after more than 34 years of loyal service to Academy has been an emotionally devastating experience. *See, e.g.*, *Jackson*, 2011 WL 2119644, at *8-9 (affirming $300,000.00 compensatory damages award in a single-plaintiff TCHRA age-discrimination case); *Giles v. General Electric Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (awarding $150,000.00 compensatory damages award in a single-plaintiff employment discrimination case).

39.    Claimants under Title VII and the TCHRA are also entitled to punitive damages where a violation is shown to have been made with reckless disregard or malice – as it clearly was here. *See* 42 U.S.C. § 1981a(b)(1) (Title VII); Tex. Lab. Code 21.2585; *see, e.g., Quality Dialysis, Inc. v. Adams*, NO. 13-05-086-CV, 2006 WL 1553353, at *11 (Tex. App.– Corpus Christi June 8, 2006, no pet.) (affirming jury's award of punitive damages against employer in a discrimination case); *Ancira Enter., Inc. v. Fischer*, 178 S.W.3d 82, 92-95 (Tex. App.–Austin 2005, no pet.) (same).  A plainer case for punitive damages would be difficult to imagine.  *See*

*also EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 733-34 (5th Cir. 2007) (upholding

$300,000.00 punitive damages award in a discrimination case under federal anti-discrimination

law that applies the same "malice or reckless indifference" standard).

40.     Under Title VII and the TCHRA, attorneys' fees are also recoverable, and Mrs.

Marshall seeks them.  *See, e.g., Miller*, 716 F.3d at 149 (affirming an award of attorneys' fees of

$488,437.08 to the plaintiff in a single-plaintiff ADEA/TCHRA age discrimination case);

*Lewallen v. City of Beaumont,* 394 Fed. Appx. 38, 46 (5th Cir. 2010) (affirming an award of

attorneys' fees of $428,421.75 to the plaintiff in a single-plaintiff Title VII failure to promote

case); *Mota,* 261 F.3d at 527-28 (affirming an attorneys' fees award of more than $300,000.00 in

a Title VII retaliation and sexual harassment case); *Watkins v. Input/Output, Inc.*, 531 F. Supp.

2d 777, 789 (S.D. Tex. 2007) (awarding prevailing plaintiff in a single-plaintiff age

discrimination case $336,010.50 in attorneys' fees); *see also Dell, Inc. v. Wise*, 424 S.W.3d 100,

103 (Tex. App.–Eastland 2013, no pet.) (affirming a jury verdict of $668,019, plus attorneys'

fees of $221,000, for a total award of $889,019.00 in an age discrimination case brought under

the TCHRA).

**D.     Exhaustion Under Title VII And The TCHRA**

41.     Mrs. Marshall incorporates the preceding paragraphs of this complaint as if set

out verbatim.

42.     In order to comply with the exhaustion requirement under the TCHRA, a claimant

must: (1) file a complaint with the TWC-CRD within 180 days of the alleged discriminatory act;

(2) allow the TWC-CRD to dismiss the complaint or resolve the complaint within 180 days

before filing suit; and (3) file suit no later than two years after the complaint is filed.  *Rice v.*

*Russell-Stanley, L.P.*, 131 S.W.3d 510, 513 (Tex. App.–Waco 2004, pet. denied); TEX. LAB.

CODE §§ 21.201-.202, 21.208 (Vernon 2006).  Thus, a plaintiff need not actually obtain a right-

to-sue letter in order to exhaust his or her administrative remedies; he or she need only be entitled to one. "Texas courts hold that it is the entitlement to a right-to-sue letter rather than the receipt of the letter that exhausts the complainant's administrative remedies." *Wooten v. Federal Exp. Corp.*, No. 3:04–CV–1196–D, 2007 WL 63609, at *8 n. 14 (N.D. Tex. Jan. 9, 2007) (citing *Rice v*, 131 S.W.3d at 513), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009). In other words, "the right-to-sue letter is not part of the exhaustion requirement, only notice of exhaustion [is required]." *Rice*, 131 S.W.3d at 513.

43.     Based on the foregoing legal standards, Mrs. Marshall has satisfied all the requirements to exhaust her administrative remedies and bring this lawsuit under the TCHRA. This is so because: (1) Mrs. Marshall filed a complaint with the TWC-CRD on May 15, 2017, which is within 180 days of the discriminatory actions she complains of in this suit; (2) since filing the complaint with the TWC-CRD, she has allowed the TWC-CRD 180 days to dismiss or resolve the complaint, and it has done neither; and (3) less than two years have passed since Mrs. Marshall filed her complaint with the TWC-CRD.

44.     Title VII plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996). Mrs. Marshall has done both of these things, and has timely brought this suit (Exs. 15 and 16).

## JURY DEMAND

45.     Mrs. Marshall demands a jury trial.

## CONCLUSION AND PRAYER

46.     Mrs. Marshall gave Academy more than 34 years of her life. In return, she was fired because of her sex on bogus charges in an approximately two-minute meeting, and then not

given the decency of a return phone call from Human Resources to even discuss her unjust and illegal termination.  Commenting on this situation, Chuck Konderla, a former employee and long-time customer put it just right: "M.B. Marshall loved that job and loved that company.  It is incredibly sad that Academy did not honor her service more."  Konderla Aff., Ex. 8 at ¶ 8.

Mrs. Marshall asks that the court issue citation for Defendant Academy to appear and answer, and that she be awarded a judgment against Defendant Academy for the following:

   a.   Actual damages including by not limited to pecuniary losses, non-pecuniary losses, back-pay, reinstatement (or front-pay), and compensatory damages;

   b.   Punitive damages;

   c.   Prejudgment and post-judgment interest;

   d.   Attorneys' fees;

   e.   Court costs;

   f.   Injunctive and equitable relief; and

   g.   All other relief to which Plaintiff is entitled.


                         Respectfully submitted,

                         OBERTI SULLIVAN LLP

              By:    s/ Mark J. Oberti
                         Mark J. Oberti
                         State Bar No. 00789951
                         S.D. Texas No. 17918
                         712 Main Street, Suite 900
                         Houston, TX 77002
                         (713) 401-3555 – Telephone
                         (713) 401-3547 – Facsimile
                         mark@osattorneys.com – Email

                         ATTORNEY-IN-CHARGE FOR PLAINTIFF

OF COUNSEL:

Edwin Sullivan
State Bar No. 24003024
S.D. Texas No. 24524
OBERTI SULLIVAN LLP
712 Main Street, Suite 900
Houston, TX 77002
ed@osattorneys.com – Email

ATTORNEYS FOR PLAINTIFF

| DESCRIPTION OF EXHIBITS TO ORIGINAL COMPLAINT | EXHIBIT |
|---|:---:|
| Andrew Brinson Affidavit | 1 |
| Chris Pepper Affidavit | 2 |
| David Kitchen Affidavit | 3 |
| Lindsey Brack Affidavit | 4 |
| Don Gustavus Affidavit | 5 |
| Shelly Landry Affidavit | 6 |
| Kirstie Brinkman Affidavit | 7 |
| Chuck Konderla Affidavit | 8 |
| Dallas Hatton Affidavit | 9 |
| Wesley Matej Affidavit | 10 |
| Mary Oviedo Affidavit | 11 |
| Academy's Submission to the TWC of June 2, 2017 | 12 |
| Academy's Submission to the TWC of June 15, 2017 | 13 |
| Mary Beth Marshall's 2016 Performance Review | 14 |
| Mary Beth Marshall's EEOC/TWC-CRD Charge of Discrimination | 15 |
| EEOC's Right to Sue Letter | 16 |